My name is Byron Keeling, and I am counsel for Appellants Stella Morrison and John Morgan. The magistrate judge assessed $30,000 worth of Section 1927 sanctions against John Morgan. Respectfully, the magistrate judge's sanctions award is an abuse of discretion. The sanctions award reflects all of the defendant's attorney's fees over the entire period from May 20, 2014 to August 28, 2015. According to the magistrate judge, John Morgan knew or should have known that the underlying conduct occurred in Judge Walker's court rather than Judge Gist's court by May 20, 2014. Of course, Judge Walker is a defendant in this case. If anyone should have known where the underlying conduct arose, it was Judge Walker. But Judge Walker's own attorneys did not take the position that the underlying conduct occurred in Judge Walker's court until February 6, 2015, when they filed the uncertified copy of the Peter Tran transcript. Of the $30,000 sanction award, $25,000 worth of the attorney's fees were for fees that were incurred or accrued before the Peter Tran transcript was filed on February 6, 2015. Section 1927 is a punitive statute. While Rule 11 may allow a court to assess sanctions against an attorney for merely negligent conduct, Section 1927 does not. To assess sanctions under Section 1927, a court must find two things. It must find that an attorney multiplied the proceedings and that the attorney did so unreasonably and vexatiously. For the latter, there must be evidence and findings of one of three things, either bad faith, improper motive, or reckless disregard. Can we talk about the timeline for a moment about exactly who knew what and when? So my understanding is that in January of 2014 is when your client got the seven questions, right, that said, please specify where this conduct occurred. And then that same month, also in January of 2014, is when you filed the First Amended Complaint that includes the sentence, to the contrary, the charges were based upon a case pending in drug court presided over by Judge Gist, if I'm saying the surname correctly. What was the basis of that statement in January of 2014 in the First Amended Complaint? What would be the basis for saying it was presided over by Judge Gist? After Judge Hawthorne issued the seven questions, according to Mr. Morgan's testimony at the sanctions hearing, he then promptly met with Ms. Morrison and interviewed her extensively. And she reported back that she was in Judge Gist's court that day and Mr. Morgan understood from his interview of Ms. Morrison that the underlying conduct occurred in Ms. Gist's court. It turns out that was a mistake, but that was the basis upon which Mr. Morgan then filed a motion for leave to file an amended complaint that he subsequently amended and then ultimately on leave of court filed on May 20, 2014. But he knew in January of 2014, he, Morgan, knew that he needed to figure out which courtroom. He got the list of seven questions and knew that he needed to interview his client, which he did. And so Mr. Morgan's position is that it's his client's fault slash lack of memory on his client's part. Well, as this Court said in FDIC v. Calhoun, it's easy for us with the benefit of hindsight to say an attorney should have done this or should not have done that. And the Court, in fact, cautioned against that kind of hindsight approach. The evidence is Mr. Morgan met with his client, and the evidence is that Ms. Morrison had a memory for some details but not others. She confessed herself at the sanctions hearing that she didn't have a full appreciation of where the underlying events occurred until she actually got to review the Peter Tran transcript in February 2015. Let me ask a little bit about the magistrate judge's opinion. Who is the magistrate? Well, there were two magistrates that were involved. The opinion that we're reviewing now, who is the magistrate who wrote that? Magistrate Giblin. All right. Early on in the discussion, he says, and this is before talking about the January complaint, Despite Morgan's in-depth knowledge of judicial immunity and his need to plead facts carefully, the original complaint all too conveniently does not specify which courtroom. That's almost an indication of intent, not just recklessness. The magistrate, again, is just talking about the original complaint, for which we're not looking at sanctions for that. He talks about Rule 11 as well as 1927 and talks about what violates Rule 11. Doesn't make a lot of distinction about whether the standards may be different, but I think earlier in the opinion does articulate the proper standard. My concern about this is that even though there's language in this opinion that could be read to perhaps be relying more on Rule 11 and negligence or just failure to abide by one's ethical obligations, there are also things in this opinion that makes it appear to me the judge is making a judgment call, a factual determination, not a judgment call, a factual determination, that there's an awful lot of gamemanship in this opinion that is certainly suggestive of intent or at least recklessness of not nailing this down, and we are looking at an abuse of discretion. We're not looking at how we would review this evidence and what we would think it would meet, but did the judge sufficiently err under the abuse of discretion standard? Work with that for me. Why is an abuse of discretion for the judge to look at this overall evidence, the fairly simple ways of figuring out in what courtroom something occurred, and ultimately I say that, you may tell me it would not have been simple, but ultimately we do have a transcript of it, and there is almost a desire, I don't need to say it that way, there's almost a desire not to identify what courtroom this occurred in. There's also some discussion of the Harper case and how the confusion that this court may have created and what exactly, how far judicial immunity goes, and there's certainly a lot of that in the final version of the complaint, but I do see an abuse of discretion, there's at least an argument here that the judge is making legitimate factual findings on, at the very least, reckless conduct on the part of the attorney, so respond. You're absolutely right. The standard is abuse of discretion. The district court, here the magistrate judge, has a wide breadth of discretion available to make factual findings, but this court has recognized that a court abuses its discretion if it bases its conclusion on a clearly erroneous assessment of the facts. The problem of articulation, does the judge say too much in here, the magistrate, that indicates the wrong standard may be applied? Is it an absence of evidence or an absence of proper explanation that's the problem? Both is a good answer. I think it may be a couple of those things. First of all, let me address the implication that the magistrate judge raises about the timing of the discussion of where the underlying conduct occurred. From Mr. Morgan's perspective, when he filed his original complaint, this wasn't about where the underlying conduct occurred. The time of the original complaint, he directly addressed Judge Walker's judicial immunity, and his argument in response to that was to say this is a Harper case. This is a what? This is a Harper case. This falls squarely on all fours, according to Mr. Morgan, with this court's opinion in Harper. Ultimately, this court said not so, but that position was not frivolous, and we know that because the magistrate court so found. The magistrate judge said that is a non-frivolous position. But that was Mr. Morgan's position as of the time of the original complaint. He didn't need to specify where the underlying conduct occurred, because at that point in time, his theory was a Harper theory. The relevance of the location of the underlying conduct didn't come into play until Judge Hawthorne issued the seven questions. I think this case follows within the progeny of this court's opinion, FDIC v. Calhoun. As with the plaintiff in Calhoun, the plaintiff here offered a colorable basis for her claim at all times in her pleadings. Ms. Morrison did not ignore Judge Walker's judicial immunity. In her original complaint, she expressed a basis for getting around that immunity. Even after Judge Hawthorne raised the seven questions, she amended her complaint to raise a colorable basis for getting around Judge Walker's judicial immunity. But if I understand your response on the facts, her basis for answering – Morgan's basis for answering the seventh question, or whichever number it was about which courtroom it was in, was I interviewed my client, Ms. Morrison. And my – in response to Judge Southwick and to me, your response about the factual basis for the sanction order is, well, it must be that Ms. Morrison was having memory issues because he must – we know that Morgan interviewed her. At the sanctions hearing, didn't she testify that she remembered the case? She remembered being there that day. She remembered leaving a briefcase in the courtroom. She remembered wearing her 3-inch heels. I mean, she seemed to have a pretty detailed memory of basically everything except for the courtroom, whose courtroom it was. She also testified that she didn't recall specifically that it was the Peter Tran case and that she has a memory that is good for some details and not for others. And frankly, I'm sensitive to that. I'm in my 50s now and have taken lots of vacations over the years and have very good memories about some of those vacations. Candidly, there are some times when I transpose the details from one of those vacations with the others. That happens. And Ms. Morrison and Mr. Morgan both testified essentially that's what happened here. Counsel, the question that is probably hard to answer maybe because of lack of clarity, but what I'm trying to get to, it seems to me the judge quite readily could have said, I don't believe all this. I don't believe this confusion was there. I believe there's some indications here that, again, you may have given me something of an answer to this, the original complaint before the questions were given. It doesn't refer to the courtroom and you said why. But it does seem to me that if the judge had said more of that in the opinion, it would be a little clearer footing to say that he's making credibility findings, that he's making findings that whatever I make of that, the lawyer himself needed to do more. You can't just file something like this without a better effort, and it's not just negligence, it's just reckless to make these sorts of assertions. If the judge had articulated it that way and said I find this implausible, as Judge Odom was asking, that particular point is just implausible that she doesn't remember that, regardless of how many vacations may have been taken. It seems to me we have an opinion that's pretty far along the line of within the discretion of a judge, and the judge didn't write it that way. Isn't that basically what we're dealing with, is a not well explained opinion dealing with questionable evidence and how he resolved it? Maybe it's not well explained in the magistrate judge's opinion, and maybe I'm being unfair to the magistrate judge, but you can't base a factual finding on your credibility determinations alone. If all of the evidence is one what, a judge or a jury, for that matter, can't just say we disbelieve that evidence without some evidence to the contrary. Well, the evidence is what somebody remembered, not whether it happened. We know what happened now, but the issue is what somebody remembered, and you can't do anything other than credibility about that. Well, I think that there are other ways that Judge Walker may have offered some evidence that might have supported the magistrate judge's determination. There's none of that on the face of the magistrate judge's opinion. The magistrate judge says, I find it incredible that Ms. Morrison didn't remember the details, but she testified reasonably that she didn't remember, and it is a reasonable explanation that she offered. Judge Giblin said, well, what about the affidavit that was attached to the original complaint? Mr. Morgan reasonably responded, oh, sure, I knew that Peter Tran was one of the many clients that Ms. Morrison had, but there was nothing in that affidavit that would connect Peter Tran to the false perjury claim. All of the explanations, all of the testimony reasonably showed that Mr. Morgan just made a mistake, and as this Court pointed out in Calhoun, we can't be doing a Monday morning quarterback assessment of what actually happened. All right, counsel.  Thank you. Please support, counsel. Judge Walker. Your Honor, Mark Sparks, I think I'll start with what Magistrate Giblin, please excuse my cold, with what Magistrate Giblin said during the hearing on the sanctions in which we had evidence taken in this matter, and that's on the record at 3668. Judge Giblin asked me, isn't the seminal issue in this case of whether or not the Ballard factors, whether or not Mr. Morgan or whether or not Mr. Morgan somehow realized that Ms. Morrison's case did not fit the Ballard factors, and therefore, official immunity didn't apply. And so after Magistrate Giblin took over this case from Judge Hawthorne, Magistrate Judge Hawthorne, he worked the case and he developed the case, and in their briefing, in their appeal, in their appellate's brief, they make a statement on page 33 at footnote 9, and with respect to opposing counsel, I have to disagree with this statement, and this is the statement. From Morgan's perspective, the situs of the underlying conduct only became relevant when Judge Hawthorne issued his order of January 2, 2014, asking Morrison, did the perjury charges concern activity in Walker's court? I provided a few slides. I promise I won't dwell on them, but if the Court would go to the third slide. I quote Mr. Morgan's own amended complaint at the top, where he actually disputes what his appellate counsel just said in the footnote, and that's where he cites the Ballard case himself in one of his first amended complaints, and it says, another important case guiding the issue of Walker's potential personal liability is Ballard v. Wall, which contains the four factors the Fifth Circuit considers when evaluating judicial immunity. And even before the seven questions were posed, Your Honors, I had filed motions to dismiss, and Mr. Morgan through counsel, excuse me, Ms. Morrison through counsel Morgan responded, and you can see there in June of 2013, the actual quotes from his brief where he actually acknowledges and states over and over again, in response, in defense of my motion to dismiss, everything happened outside of Judge Walker's court. Nothing happened in Walker's court. It all happens, Judge Gist, please excuse me for correcting the court, Larry Gist of our drug impact court in Beaumont. Everything happened outside of Judge Walker's court, and this is in June of 2013, and some of these are actually subtitle headings, not just comments in the brief. Some of these are actual headings. And then he repeated it again after the seven questions were posed, after he filed and then didn't pursue his first first amended complaint, and then after actually his first amended complaint was filed with the court, he repeated these same defenses. And so if you look at the first page with the little colors on it, the yellow is where, Your Honors, Magistrate Judge Giblin said, look, he's sanctionable for these things in the yellow. And then I flagged the January 2014 order by Judge Hawthorne, Magistrate Judge Hawthorne that posed the seven questions. And this is important in the first bullet point, Your Honors, because this is where it's absolutely clear that whatever the Merkle claims, 1981 and 1983, not related to the alleged fabrication of the perjury charge are barred by judicial immunity and her state law claims are precluded. At this moment, in January of 2014, the only thing left for anyone to consider in this case was the alleged fabrication of perjury charges that Judge Walker was alleged to have conspired with our local district attorney and some other judges with. So the Harper v. Merkle is an interesting defense and probably one that stretches because they need to stretch, but it fails on this date at this flag at January 2, 2014, because we all knew at that point we're dealing with a fabrication case. And in response to the seven questions, this is what I find really remarkable, Your Honors, in response to the seven questions, Mr. Morgan took a 32-page complaint with three defendants and filed or attempted to file a 61-page complaint, adding three more defendants, including another judge, a special prosecutor, and me, his opposing counsel. And I think the proliferation and the exacerbation of the already existing confusion that Mr. Morgan inserted in this litigation from the outset was a ruse, was to prevent the court from realizing, look, there's nothing left here. He did not file this complaint. He filed another First Amendment complaint, and as the court can see, yet he continued to argue in all three complaints that this conduct absolutely occurred outside of Judge Walker's courtroom. The Calhoun case, I'm very glad he brought that up. Calhoun, of probably the three top cases he cites, he cites Pachinko, Cantu, and Calhoun probably the most. Cantu and Pachinko are not published, but I'll talk about those in just a second. This one is the one he discussed mostly in his opening statement. I think this is an educational case for me in handling these types of matters. Honestly, I've never gone through something like this before, a 1927 sanction issue. I hope to never do one again. In that case, Judge McBride was kind of given the case at the last minute. I don't know if the court's familiar with the facts, but there were recusals, and at the last minute, this case lands in his lap and he tries the case. And he says, my goodness, this case, there is no good faith basis to bring this on the extension of the law. And so he sanctioned the FDIC and their outside counsel, but he did so notably on an oral order. And he did so without being, and this is a word I had to look up according to the Fifth Circuit, pellucid in his explanation. And so there was an oral conclusory order that this case should have never been brought to begin with, that it was bad faith by the FDIC counsel. And that's kind of all this court had to evaluate. At this stage, though, with Judge Giblin's order that he issued with 16 pages of discussion about Mr. Morgan and the evidence adduced at the sanctions hearing. By the way, there was no sanctions hearing in Calhoun. There was no evidence taken. Here with Magistrate Giblin, we actually had a time blocked off where evidence and witnesses were presented. And people were, I was cross-examined. Mr. Morgan was cross-examined. He had the opportunity to put on witnesses. Magistrate Giblin observed the testimony. And then when it comes to the suggestion that it's not reasonable for him to reject these, excuse me, it's not reasonable for Magistrate Giblin to reject some of these arguments by Mr. Morgan, page 20 of his order is very explicit that he just didn't buy it, because he notes, and this is something I harped on at the hearing, that Ms. Morrison, just four months prior to filing this lawsuit, and the record sites are on this lawsuit, she was putting in grievance responses before the State Bar very specific details about the Peter Tran case and about the behavior of Judge Walker in his courtroom involving the Peter Tran case. And then Judge Giblin goes on, Magistrate Judge Giblin goes on to recount the actual testimony that I adduced from her on the stand, which is, no, my memory is fine. I remember it very well. And as Justice Olam noted, there's the issue of the heels. She was very specific about what she remembered that day. So as I understand the specific event that we're talking about here, I don't know if Morrison was in two courtrooms that day or more. It's one thing to remember a case very well. It's something else to remember a specific event in that case. I'm not with you yet. What can you tell me more than you've said so far that the mere fact that this was an important case to her four months beforehand, she was doing whatever she was doing, why would that mean one way or the other whether she specifically remembers where she was when this very finite event occurred? Your Honor, Magistrate Judge Hawthorne already made a finding on that in this particular case, and that is her grand jury testimony. And this is on page 35 of our brief. I quote from the record of page 1988, and this is what Judge Hawthorne ruled before he was forced to recuse himself. First, despite vague and unspecified claims of, quote, age and health issues, close quote, it is wholly implausible that Morrison, a practicing attorney, cannot recall the, quote, specific underlying proceeding, close quote, that led to her having to testify before a grand jury for five hours, which was, quote, a very humiliating and degrading situation, close quote. So Magistrate Hawthorne looked at this same argument and rejected it. And then Magistrate Giblin looked at this same argument and then rejected it. Two separate magistrates rejected the argument they make here today, Your Honor. And both of these judges had the opportunity, or at least Magistrate Giblin, to observe the credibility of the witnesses that were presented on the stand. So I— We're, of course, a step removed from Morrison. We're looking at what Morgan knew when he was—and when was any continuing—continuation of this case by Morgan improper subject to these sanctions? So it comes down to what did Morrison tell Morgan? I respectfully—their Pachinko case sure says differently because in their unpublished case, Pachinko, that's a case where he represented a prisoner who was suing Dr. Pachinko for not giving him an operation that he said the records required him to give. If you'll notice in their case, in that instance, the prisoner at least gave the date that he saw the doctor. And in that instant when he gave the date, later on down the road, you'll note in the opinion, it was his own lawyer that went and got the records to see, my goodness, did Pachinko really miss the referral for an operation or not? And so when they accuse me of not having obtained the transcript quick enough, first of all, I'm dealing with a complaint that they don't know when it happened, they don't know where it happened, but somehow it's my responsibility to go figure that out for them. But setting that all aside, the plaintiff lawyer in Pachinko did that very thing. And he didn't even have a client with alleged memory problems. He just had a guy in prison. And so I like their authority. I'm always trying to prepare for the question what's your best case. I like their cases because they're instructive on both what not to do as a district court, don't just rule from the bench and not give determinations on credibility or factual findings because then you have nothing left to review. But I like Pachinko with a prisoner who at least gave the date that he saw the doctor and then the plaintiff's lawyer who said, you know, my guy may not have memory problems, but I better go get these records and see if there's something here or if I need to back off the case. And let's not forget the fact that there was the six-month delay after Mr. Morgan said he, quote, shall inform the court after reinterviewing his client. What you see on page 20 of Magistrate Gidlin's opinion is just a complete rejection of the theory that Ms. Morrison couldn't recall these details had Mr. Morgan not pried deep enough or pried well enough. And far as the negligence is concerned, I agree, Magistrate Judge Gidlin uses that but recklessness is just the kissing cousin of multiple negligence. I mean, it's just negligence stacked on negligence is what it is. And so perhaps the vernacular could have been a little bit better, but recklessness is excessive negligence, Your Honors. And I think if you look at the little chart, you see where there's all these flags and for, you know, for a year the judge allows it to go on. And then finally, after in May of 2014, after the third attempt is made where they're still alleging the same thing, the judge says, okay, at that point, at that point that's recklessness. At that point that's recklessness. So if Your Honors don't have any other questions, I really am, I think I give my time back. Thank you. Thank you. Really just a couple of points, Your Honors. Number one, I do think that the chronology is very important, as Judge Oldham you've already pointed out. Judge Hawthorne issued his order of partial dismissal in January 2014. As the magistrate judge himself recognized in the sanctions order, before January 2014 this was a Harper case. The significance of January 2014 is at that point Judge Hawthorne rejected the Harper argument. It was then preserved for this court to review, which ultimately it did in 2017. Judge Hawthorne asks seven questions. Mr. Morgan then met with Ms. Morrison and amended his complaint. Judge Walker's counsel says, well, the complaint added several new defendants, but none of those defendants sought sanctions and they're not present here. Judge Walker's counsel says that the complaint alleged an assortment of order says that's not a basis for sanctions under Section 1927 and he didn't award them on that basis. And he also recognized that the only pleading against Judge Walker left after January 2014 was the false perjury case. The other multifarious claims really had more to do with the other defendants. The real issue is just after January 2014 was Mr. Morgan reckless in asserting that the underlying events arose in Judge Jitt's court as opposed to Judge Walker's court. And, again, recklessness in this court means something more than mere negligence. Recklessness means such conscious disregard that a court may reasonably infer that the case itself is being pursued for an improper purpose. And respectfully, I think it's hard for the magistrate judge to make that conclusion when the Harper argument itself was preserved and one that the magistrate judge found not to be frivolous. I like Calhoun and Pacheco, too. Those cases, I think, make a couple of important points for this case. First, they point out that a plaintiff need not have a fully developed factual case before filing suit. Second, they point out that in many cases, sometimes the only information available to an attorney is an interview with a client and the client's recollection of past events. How was this transcript retained? What did it take, explaining the record, to get the transcript of that hearing that showed what courtroom it had occurred in? Honestly, I don't know. It was Judge Walker's counsel eventually who filed the uncertified transcript in February 2015. Understood. But as far as the origin of that, the steps taken to get it, that's not in the record? It's not. I assume Judge Walker tracked down the court reporter and secured the transcript. Thank you. I have nothing further, Your Honors. Mr. Morgan respectfully asks this Court to vacate the Magistrate Judge Sanctions Award. All right. Thanks to both of you for helping us.